UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00140-GNS-HBB

TAMMIE AUSTIN                                                                                        PLAINTIFF

v.

STATE FARM FIRE AND
CASUALTY COMPANY                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Reconsider (DN 52). The motion is ripe for adjudication. For the reasons stated below, the motion is **DENIED**.

### I.    STATEMENT OF FACTS AND CLAIMS

Plaintiff Tammie Austin ("Austin") brought this suit against State Farm Fire and Casualty Insurance ("State Farm") to recover insurance benefits through a policy taken out by her deceased husband, James Moore ("Moore"). (Compl. ¶¶ 9-12, DN 1-1). Austin and Moore were married in 2015 and purchased a house in Allen County, Kentucky (the "Property") in 2018. (Notice Removal Ex. 2, at 1, DN 1-2). Moore purchased a homeowner's policy through State Farm ("Policy"), which "include[ed] coverage for the house and personal property." (Def.'s Mem. Supp. Summ. J. 2, DN 40-1; Def.'s Mot. Summ. J. Ex. 4, DN 40-4 [hereinafter Policy]). Moore was the only named insured on the Policy; however, the Policy included a provision that classified spouses of named insureds as insureds "so long as [the spouse] resides primarily with that Named Insured." (Policy 1-3, 15-18).

Moore was physically abusive towards Austin. (Austin Dep. 60:10-24, Sept. 18, 2024, DN 40-2). Due in part to Moore's drug use and physical abuse, Austin left the Property in November 2020 and began living with her daughter. (Def.'s Mot. Summ. J. Ex. E, ¶ 6, DN 40-6; Austin Dep.

1

54:25-55:2). Austin also testified that she was effectively "thrown out" by Moore so that his girlfriend could move in. (Austin Dep. 52:21-53:8). Austin subsequently filed for divorce, which was never finalized. (Austin Dep. 7:16-20). On June 27, 2022, Moore set fire to the Property and committed suicide. (Compl. ¶¶ 10-12). Austin filed a claim with State Farm to recover for damage to the home as well as for her personal property that remained in the house. (Austin Dep. 62:10-20; Pl.'s Mot. Declaratory J. Ex. 3, at 1, DN 38-3 [hereinafter Decision Letter]). On July 12, 2023, State Farm issued a letter to Austin denying her claim on the grounds that she was not an insured under the Policy. (Decision Letter 1).

Austin filed suit in Allen Circuit Court (Kentucky) asserting claims for breach of contract, breach of the duty of good faith and fair dealing, a violation of the Kentucky Unfair Claims Settlement Practices Act, a violation of the Kentucky Consumer Protection Act, and declaratory judgment. (Compl. ¶¶ 30-66). State Farm removed the action. (*See* Notice Removal, DN 1). Austin's breach of contract and bad faith claims were bifurcated. (*See* Mem. Op. & Order 5, DN 29). State Farm moved for summary judgment Austin's claims for breach of contract and declaratory judgment, which the Court granted and dismissed the claims. (Mem. Op. & Order 11, DN 49). Following a telephonic pretrial conference, Austin was given until June 2, 2025, to file a motion to reconsider and address the viability of the bifurcated claims. (Order 1, DN 51). Austin has timely filed said motion. (Pl.'s Mot. Reconsider, DN 52).

## II.  JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332.

### III.  STANDARD OF REVIEW

The Court's Order dismissing Austin's claims for breach of contract and declaratory judgment is considered an interlocutory order, as the bad faith claims remain pending, and no judgment has been issued.  *See Johnson v. United States*, No. 3:15-cv-715-DJH-CHL, 2019 WL 236720 at *2 (W.D. Ky. Jan. 16, 2019) ("When the Court grants summary judgment in part and other claims remain pending, the Court issues an interlocutory order, rather than a judgment." (citing *CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 823 n.10 (6th Cir. 2008))). "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted).

Relief from interlocutory orders is available whenever justice requires, though "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citation omitted).  A motion to reconsider under Rule 54(b), however, is not "a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought." *Owensboro Grain Co., LLC v. AUI Contracting, LLC*, No. 4:08CV-94-JHM, 2009 WL 650456, at *2 (W.D. Ky. Mar. 10, 2009) (internal quotation marks omitted) (citation omitted). Ultimately, "[t]he moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Reed v. Gulf Coast Enters.*, No. 3:15-CV-00295-JHM, 2016 WL 3963187, at *2 (W.D. Ky. July 21, 2016) (citation omitted).

## IV. DISCUSSION

### A. Motion to Reconsider Previous Order

#### 1. *Clear Error and Preventing Manifest Injustice*

Austin's arguments concerning the Court's alleged error can be categorized into three points. First, Austin argues that the Court "erred by making a factual determination regarding whether Ms. Austin [1] was a victim of domestic violence and [1] did not reside in her home . . . because of the domestic violence she endured." (Pl.'s Mot. Reconsider 4). Indeed, it is Austin's position that "the Court should never have weighed any evidence in this matter and that it was error for the Court to make a factual determination." (Pl.'s Reply Mot. Reconsider 5, DN 54).

Austin misunderstands the Court's role at summary judgment. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Austin failed to show there was a material question of fact for which a jury could reasonably find in her favor. Furthermore, Austin's own deposition testimony guided the Court's findings that: (1) she was a victim of domestic violence; and (2) domestic violence was not the sole reason she no longer resided on the Property. (*See* Austin Dep. 52:21-53:8, 60:10-24; Mem. Op. & Order 9).

On summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

4

(1986). State Farm successfully presented evidence that Austin no longer resided on the Property, which precluded her from being insured under the Policy. (Mem. Op. & Order 5-7; *see* Policy 15, 17-18). Austin did not deny this fact, and the Court found that, as a matter of law, KRS 304.12-211 was inapplicable to her case. (Mem. Op. & Order 7). Austin has failed to show that the Court made an improper factual determination, and her motion is denied on this ground.

Second, because the Kentucky Supreme Court has found similar "resides primarily" language in other insurance contracts to be ambiguous, Austin argues that this Court should "find the identical 'resides primarily' language in the Policy ambiguous and thus find coverage." (Pl.'s Mot. Reconsider 4-5 (citing *Hill v. State Farm Mut. Auto. Ins. Co.*, 709 S.W.3d 232, 237 (Ky. 2025); *Roland v. Ga. Farm Bureau Mut. Ins. Co.*, 462 S.E.2d 623 (Ga. 1995) (in which the Georgia Supreme Court found that ambiguities in insurance contracts should be construed against the insurer))). This argument fails because the "resides primarily" language in the Policy is patently unambiguous as applied to Austin's case. In *Hill*, the issue before the Kentucky Supreme Court was "whether residency as used in the insurance contract [at hand] meant legal domicile or actual physical residence." *Hill*, 709 S.W.3d at 234. Its holding was narrow: "[u]nder the specific facts here, the Court finds the policy language was unclear." *Id.* at 235. *Hill* involves a vastly different set of facts than the current case, and Austin has failed to demonstrate how its holding applies. It is worth noting that Austin does not explain how the "resides primarily" language in the Policy could be ambiguous as applied to her situation—in fact, through her deposition testimony, Austin admits she did not reside in the Property at all at the time of the fire. (Def.'s Mot. Summ. J. Ex. E, ¶ 6, DN 40-6; Austin Dep. 54:25-55:2). Austin's motion is denied on this ground as well.

Lastly, Austin argues that "Kentucky public policy requires an exemption from enforcement of the primary residence requirement in the insurance contract." (Pl.'s Mot.

5

Reconsider 6 (citing *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865 (Ky. 1981))). This argument, again, rests on the presumption that Austin was denied coverage solely because of her status as a victim of domestic abuse. As already mentioned, "there is no question [KRS 304.12-211] protects victims of domestic violence and reflects the public policy concerns of denying innocent co-insureds their insurance benefits." (Mem. Op. & Order 8-9). The Court, however, found that KRS 304.12-211 simply does not apply to Austin's situation as she failed to demonstrate that her bodily injury resulting from domestic violence was the reason for State Farm denying her coverage, much less the "sole reason." (Mem. Op. & Order 8-9). Austin has failed to show that the Court's findings were clearing erroneous, and her motion is denied.

### 2.   *New Evidence Available*

Austin also claims that "if this Court required a factual showing of domestic violence, [she] has met that burden." (Pl.'s Mot. Reconsider 9). She states that "the Court's Opinion noted that there was a lack of evidence regarding the abuse in the record[,]" and has submitted exhibits detailing Moore's abuse through affidavits, photographs, text messages, and journal entries. (Pl.'s Mot. Reconsider 9; *see* Pl.'s Mot. Reconsider Exs. 1, 2, 4, 6, 7, DN 52-1, 52-2, 52-4, 52-6, 52-7).[1]

---

[1] Austin attempts to argue that the exhibits are not "newly discovered evidence" but should be considered "in order to prevent manifest injustice and a clear error of law." (Pl.'s Reply Mot. Reconsider 4-5). She states that she "included exhibits solely to establish that [she] does in fact have evidence that should be presented and weighed by the jury." (Pl.'s Reply Mot. Reconsider 5). It is unclear how the filing of new exhibits in support of a party's motion for reconsideration would not be considered an attempt to introduce newly discovered evidence, even if those exhibits comport with the same arguments the party has made "throughout the course of this litigation." (Pl.'s Reply Mot. Reconsider 5). For the reasons mentioned below, the Court will not accept the new exhibits based upon any theory of reconsideration under Rule 54(b).

Through this evidence, Austin attempts to "supplement the record with incontrovertible facts that she was removed from her home due to domestic violence." (Pl.'s Mot. Reconsider 9).

At summary judgment, the Court held Austin failed to demonstrate that: (1) she was forcibly removed from the Property due to domestic abuse the resulting in bodily injury; and (2) this bodily injury was the sole reason State Farm denied her coverage. (*See* Mem. Op. & Order 9-10); KRS 304.12-211(2)(a). Contrary to her prior testimony, Austin now states that "[t]he only reason [she] did not reside in the home is because she was unable to stay there for her own safety." (Pl.'s Mot. Reconsider 9-10). Austin previously indicated several reasons for her departure from the Property, including Moore's drug abuse and his desire for his new girlfriend to cohabit with him. (Austin Dep. 52:21-53:8). Even if her new argument aligned with her previous testimony, the Court would not accept Austin's newly filed exhibits because none of them appeared to be undiscoverable prior to summary judgment. *See Rodriguez*, 89 F. App'x at 959 ("Since [the moving party] had the evidence at the time of the court's earlier decision, the district court's refusal to consider this evidence is not clearly unjust."). The Court accordingly will not consider Austin's newly filed exhibits, and her motion also fails on this ground.

### B.    Whether the Bad Faith Claims Survive[2]

Austin argues that even if her motion to reconsider is denied, she still has viable bad faith claims as a non-insured under two theories. (Pl.'s Mot. Reconsider 13-15). First, she posits that "[t]he UCSPA evinces the General Assembly's clear intent to bar insurance carriers from engaging in certain practices in the settlement of all claims, not just those which are covered under an

---

[2] Austin devotes a portion of her motion to argue that "if this Court were to reconsider summary judgment . . . , the Court must allow her bad faith claims to survive and proceed even though Defendant State Farm also seeks to bar Ms. Austin's breach of contract claims on the basis that it was brought after the statute of limitations." (Pl.'s Mot. Reconsider 9-12). The Court has denied Austin's motion to reconsider, so this argument is moot and will not be addressed.

7

insurance carrier's policy." (Pl.'s Mot. Reconsider 13). Second, she claims she is "clearly a third-party beneficiary under the Policy[,]" and that under Kentucky law, "[a] third-party beneficiary may 'in his own right and name enforce [the] promise made for his own benefit even though he is a stranger both to the contract and to the consideration.'" (Pl.'s Mot. Reconsider 14 (quoting *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595-96 (Ky. 2012))). Both of these arguments fail under the standard set forth in *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993).

In *Wittmer*, the Kentucky Supreme Court outlined the following:

> [A]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Id.* at 890 (alteration in original) (internal quotation marks omitted) (citation omitted). The Sixth Circuit has held that the *Wittmer* test applies to all bad faith claims under Kentucky law, "whether brought by a first- or third-party claimant or brought under common law or statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). Thus, to prevail under either of her theories, Austin would need to demonstrate that State Farm is "obligated to pay the claim under the terms of the policy." *Wittmer*, 864 S.W.2d at 890.

The Kentucky Supreme Court has highlighted "that a plaintiff has a 'steep burden' of satisfying [the *Wittmer* test]." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021). Regarding the first prong of the test, the Kentucky Supreme Court has admonished: "[t]o be clear, an obligation to pay requires proof that the insured's policy requires the insurer to pay, not that there is liability under the contract . . . ." *Id.* at 585-86 (finding that the plaintiff failed the first prong of the *Wittmer* test where the insurer "had no duty to pay [claimant] because of express exclusionary language in the policy."). In the current case, the Court has already determined that

8

State Farm had no obligation to pay Austin, as she did not qualify as an insured under the Policy. The Court has denied Austin's request to reconsider this finding, and, therefore, she cannot satisfy the first prong of the *Wittmer* test. All of Austin's bad faith claims must also be dismissed.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider (DN 52) is **DENIED**, and Plaintiff's bad faith claims are **DISMISSED**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

August 20, 2025

cc:     counsel of record